[Civ. No. 4903. Fourth Dist. May 27, 1954.]

OLIVER EARL BRYANT et al., Appellants, v. TULARE ICE COMPANY et al., Respondents.

[Civ. No. 4904. Fourth Dist. May 27, 1954.]

MARGARET GOODRICH et al., Appellants, v. TULARE ICE COMPANY et al., Respondents.

Lane Williams for Appellants.

Crowe, Mitchell & Hurlbutt for Respondents.

BARNARD, P. J.—These are actions for the wrongful death of Wiley S. Bryant and Nancy M. Bryant, who were killed in a collision between the car in which they were riding and an ice truck driven by Leonard Duane Brownlee, an employee of the ice company. The accident happened about 5:30 p. m. on September 27, 1952, on Highway 99, about 2½ miles north of Tulare.

The respondent Edgeworth was the sole owner of an ice company in Tulare, which he conducted under the fictitious name of Tulare Ice Company. He had employed Leonard Brownlee, who was 16 years old, for some four months preceding the accident, to cut ice and wait on customers at his place of business. At 7 o'clock on the morning of September 27, Edgeworth found that his regular driver for his 1936 model Ford panel delivery truck would not be able to drive the same because of an injury to his hand. Being unable to obtain anyone else experienced in cutting ice and servicing iceboxes Edgeworth had Leonard take over the route that day, ac-

companied by the regular driver. In servicing the route that day Leonard drove the truck in and about the city of Tulare and on the adjacent highways for a distance of approximately 75 miles. This truck had been overhauled, including the front end and steering apparatus, about two weeks before that day, after which it was tested by the mechanic who did the work and by Edgeworth, and was found to be in good condition. Nothing was observed by Leonard on the day of the accident to indicate that it was not in perfect mechanical condition until the time of the accident. The accident occurred on the last trip which Leonard was to make that day while he was taking 600 pounds of ice to the Tagus Ranch, about five miles north of Tulare. The regular driver did not go along on that trip, but another boy, a friend of Leonard's, went with him.

At the time and place of the accident Mr. and Mrs. Bryant were driving south on Highway 99 in a 1938 model coupé. According to the driver of a vehicle which was following them they were driving at between 35 and 40 miles an hour, were on their own right-hand side of the road, were proceeding in a straight line, and the course of their vehicle was not changed up to the point of impact. The vehicle then being driven by Leonard Brownlee in a northerly direction along this highway suddenly went out of control, veered abruptly across the white center line and struck the other car in the south-bound lane of traffic. Mr. Bryant, who was then 77 years of age, and Mrs. Bryant who was then 75 years old, were killed in the collision. An experienced mechanic who examined the Ford panel truck a few days after the collision t·stified that he found that both of the bolts or rivets at one end of the cross member, to which the radius rod or wishbone of the vehicle was attached, were gone; that in his experience he had found this condition in other vehicles; that this condition is caused by the wear and twist of the frame as it is in use over the years, causing these bolts or rivets to eventually work loose or break and fall out; that when this happens the wheels of the vehicle can turn without any corresponding turn of the steering wheel; and that when this occurs the vehicle goes out of control and there is nothing that the driver can do about it.

The plaintiffs in one of these actions are the seven adult sons and daughters of Mrs. Bryant. The plaintiffs in the other are the eight adult sons and daughters and two grandchildren of Mr. Bryant. The actions were consolidated for trial, and a jury returned a verdict in favor of the defendants.

Motions for judgment notwithstanding the verdict and motions for a new trial were denied, and the plaintiffs have appealed from the judgments and from the orders denying their motions for judgment notwithstanding the verdict. The appeals are presented together.

It is first contended that it appears, as a matter of law, that each defendant was guilty of negligence; that Leonard Brownlee was negligent as a matter of law, in driving on the wrong side of the highway, and in taking the truck on the highway because of his lack of experience, since he did not have a chauffeur's license and had received a temporary operator's license only four weeks before; that Edgeworth was negligent as a matter of law, being charged with knowledge that the boy was incompetent to drive the ice truck since he had little knowledge of the boy's driving qualifications, and knew that the boy was too young to have a chauffeur's license; and that Edgeworth was negligent as a matter of law in hiring an unlicensed chauffeur to drive the truck.

 The fact that the accident occurred on the wrong side of the road does not establish negligence on the part of the driver of the truck, as a matter of law. While the general rule is that the violation of a statute is presumptive evidence of negligence it is also well established that in an emergency or under unusual conditions circumstances may be shown to excuse the violation. (*Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581 [177 P.2d 279]; *Jolley* v. *Clemens*, 28 Cal.App.2d 55 [82 P.2d 51].) While there was some conflict in that regard, there was strong evidence that this vehicle suddenly went out of control, that there was nothing which the driver could have done about it, and that this occurred because of a latent defect which could not have been discovered with reasonable care. Not only was the evidence sufficient to sustain the jury's implied finding with respect to these matters, but the record discloses an unusually strong showing to that effect. The question was one of fact for the jury.

 No negligence appears, as a matter of law, because the driver of this truck was not licensed as a chauffeur. (*Hunton* v. *California Portland Cement Co.*, 50 Cal.App.2d 684 [123 P.2d 947].) The driver of the truck was not hired for the principal purpose of driving a motor vehicle on the highway and no causal connection appears, as a matter of law, between the form or date of his license and the happening of the accident. There was evidence that this truck operated

about the same as an ordinary passenger car, that the driver had a temporary operator's license, and that he had had considerable experience in driving cars. There is nothing in the evidence showing any disqualification as a driver on the part of Leonard Brownlee at any time prior to this accident, and none showing the employer's knowledge of any such disqualification. There is no evidence or proof that any other driver, regardless of qualifications or experience, would not have been just as powerless as he was to control this vehicle when the latent defect in the mechanism caused it to go out of control.

It is next contended that the evidence shows, as a matter of law, that this collision resulted from the negligence of the driver of the truck and does not indicate that the collision was in any way inevitable or unavoidable. It is argued in this connection that the evidence shows that Leonard Brownlee was accompanied on this last trip by another boy who was 17 years old, that the two boys "were examining a bee in a cup of ice while driving along," and that the only reasonable inference which can logically be drawn is that the driver of the truck lost control thereof because he was in some manner "playing while he was driving." Not only was the witness who testified to the "bee" incident rather completely discredited, but the evidence to that effect was vague as to the exact time when the incident was supposed to have occurred. Both of the boys denied that there had been any playing, there was ample evidence that the vehicle suddenly and abruptly swerved into the path of the other car, and there was ample evidence, including that of several witnesses, that the sudden swerving of the car was caused by the latent defect amply disclosed by other evidence. These various issues presented questions of fact for the jury.

It is next contended that counsel for the respondents committed prejudicial error in arguing to the jury that the appellants suffered little financial loss, other than for the funeral expenses; in stating to the jury that "these people . . . now seek to break up the little ice company owned by my client, Mr. Edgeworth, and which would wreak financial havoc on Duane Brownlee and his father," and in stating that the plaintiffs are "scrambling for $100,000 apiece from the owner and proprietor of the little ice company and from Duane Brownlee, who finds it necessary to work at 16 years of age, and his father." We find nothing improper in the arguments made with respect to the amount of pecuniary

loss to the appellants, as disclosed by the evidence. ▇ The other remarks objected to were improper and should not have been made. That they were prejudicial in the sense that they could have affected the verdict seems most doubtful, in view of the evidence as a whole. In any event, no objection was made and there was no request to have the jury instructed to disregard them. It does not appear that such an instruction would not have been sufficient. The trial judge, in passing on motions for a new trial, was in the best position to pass upon the question of any possible prejudicial effect. This is one of the instances in which a party should not be permitted to remain quiet, taking a chance on a favorable verdict, and then raise the objection on appeal if the verdict is unfavorable.

▇ It is next contended that the conduct of one juror in giving false answers on his voir dire examination was prejudicial error. It is argued that this juror said that he was not acquainted with any of the parties, that during a recess this juror was seen talking to Mr. Edgeworth in the men's wash room, and that it is obvious that the answer of the juror was false since it seems conclusive that if one party talks to another he is acquainted with the other. We are not impressed with this argument, and no prejudice is disclosed by the record.

▇ It is next contended that the court erred in failing to give one instruction telling the jury that ''the owner of a motor vehicle is liable when he negligently entrusts such vehicle to an incompetent or inexperienced person when such person causes injury while operating said vehicle upon a public highway,'' and that if it was found that Edgeworth failed to exercise ordinary care in the selection of Leonard Brownlee as the driver of this truck ''then you will find for the plaintiffs and against the defendants.'' This instruction was erroneous in that it called for a verdict for the appellants if the jury merely found that Edgeworth was negligent in the selection of this driver, and regardless of whether or not the driver did or did not cause the accident. Moreover, no negligence of this sort was alleged, the complaints alleging only negligence based on the doctrine of *respondeat superior*. It may be further observed that had a correct instruction been given with respect to this matter it could not reasonably be expected to have affected the verdict in view of the evidence in that. connection. No evidence indicating lack of proper qualifications on the part of this driver· appears, other than

the fact of his age, and he had been licensed to drive an automobile.

Appellants' final contention is that the heirs of Mr. and Mrs. Bryant suffered a pecuniary loss through the death of their father and mother, respectively, in being deprived of their advice, comfort and society. While this may be conceded, this issue is immaterial on this appeal since the jury found for the respondents on the question of liability.

The judgments and orders appealed from are affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied June 22, 1954, and appellants' petition for a hearing by the Supreme Court was denied July 21, 1954. Shenk, J., was of the opinion that the petition should be granted.