[L. A. No. 24861.   In Bank.   July 17, 1958.]

CLAUDE ALARID, Appellant, v. ALEXANDER J. VANIER, Respondent.

Simon & McKinsey and Thomas W. McKinsey for Appellant.

Powell & Banyard, Robert A. Banyard and Robert B. Powell for Respondent.

GIBSON, C. J.—Plaintiff brought this action to recover for personal injuries and property damage suffered when his car was struck in the rear by an automobile driven by defendant. He appeals from a judgment in favor of defendant, contending that the judgment is contrary to the evidence and that he was prejudiced by certain instructions given at defendant's request.

The manner in which the accident occurred is undisputed. Plaintiff was driving south in the outside lane of a level, four-lane asphalt highway. It was a clear day, and the pavement was dry. He brought his car to a stop approximately 100 feet north of an intersection which had stop signs at all four corners. Five cars had stopped between plaintiff and the intersection, and, after he had been there for 15 or 20 seconds, waiting for the traffic to proceed, he heard a squeal of brakes and the rear of his car was struck by the front of defendant's car.

Defendant testified that he had driven onto the highway two and a half blocks north of the scene of the accident, and, as he proceeded toward the intersection, he observed plaintiff's car coming to a stop. When traveling at 20 miles per hour and about 200 feet from the place where plaintiff had stopped, defendant applied his brakes, but they did not take hold. There was no resistance to the pressure which he ap-

plied, and the pedal went all the way to the floor. Defendant could not turn to the left because another automobile was there, and he was afraid to turn to the right, toward a ditch, for fear he might tip over. In the stress of the moment he decided to go straight ahead, and he was so excited he did not think of using the hand brake. Witnesses who examined defendant's car after the accident testified that the brake pedal, when tested, went down to the floor without resistance and that there were ''no brakes.''

The parties agree that, under the undisputed evidence, a presumption of negligence upon the part of defendant arose by reason of the operation of sections 670 and 679 of the Vehicle Code as they read at the time of the accident. Section 670 then provided: ''(a) No person shall operate on any highway any motor vehicle . . . unless such motor vehicle . . . is equipped with brakes adequate to bring such motor vehicle . . . to a complete stop when operated upon dry asphalt or concrete pavement surface where the grade does not exceed 1 per cent at the speeds set forth in the following table within the distances set opposite such speeds: [The stopping distance for a speed of 20 miles per hour was fixed at 37 feet.*] . . . (c) If a vehicle is equipped with more than one system of brakes, each shall be maintained in good working order. . . .'' Section 679 declared that it was unlawful to operate on any highway any vehicle which was in an unsafe condition or was not equipped as required by the code.

■ The presumption of negligence which arises from the violation of a statute is rebuttable and may be overcome by evidence of justification or excuse. (*Gallup* v. *Sparks-Mundo Engineering Co.*, 43 Cal.2d 1, 9 [271 P.2d 34]; *Tossman* v. *Newman*, 37 Cal.2d 522, 525 [233 P.2d 1].) ■ There is no evidence of contributory negligence, and, since it is clear from defendant's admission that the failure of his brakes was a proximate cause of the accident, it follows that defendant would be liable as a matter of law in the absence of a sufficient excuse or justification for violation of the code. It is plaintiff's contention that defendant did not produce enough evidence to rebut the presumption and, therefore, that the

---

*The provisions relating to stopping distances now appear in section 670.05 of the Vehicle Code, which specifies a maximum stopping distance of 25 feet for a car like defendant's when traveling at a speed of 20 miles per hour.

622

trial court erred in denying plaintiff's motion for a directed verdict upon the issue of liability. In passing upon this contention we must consider what rule is to be applied in determining whether defendant has overcome the presumption.

A large number of cases, although varying considerably in the language used, stand generally for the proposition that where a person has disobeyed a statute he may excuse or justify the violation by evidence that he did what might reasonably be expected of a person of ordinary prudence acting under similar circumstances who desired to comply with the standard of conduct established by the statute. (See *Nevis* v. *Pacific Gas & Elec. Co.*, 43 Cal.2d 626, 633 [275 P.2d 761] ["nonnegligent" ignorance of facts]; *Gray* v. *Brinkerhoff*, 41 Cal.2d 180, 184 [258 P.2d 834] [declaring that the violator could have fulfilled his duty "if he had exercised ordinary care"]; *Whitechat* v. *Guyette*, 19 Cal.2d 428, 436-438 [122 P.2d 47]; *Berkovitz* v. *American River Gravel Co.*, 191 Cal. 195, 198-200 [215 P. 675] [unlighted tail light]; *Edgett* v. *Fairchild*, 153 Cal.App.2d 734, 738-739 [314 P.2d 973]; *McEachen* v. *Richmond*, 150 Cal.App.2d 546, 550 [310 P.2d 122]; *Bryant* v. *Tulare Ice Co.*, 125 Cal.App.2d 566, 569 [270 P.2d 880]; *Taylor* v. *Jackson*, 123 Cal.App.2d 199, 201-202 [266 P.2d 605]; *Fuentes* v. *Panella*, 120 Cal.App.2d 175, 183-184 [260 P.2d 853]; *Driver* v. *Norman*, 106 Cal.App.2d 725, 727-728 [236 P.2d 6]; *Merry* v. *Knudsen Creamery Co.*, 94 Cal.App.2d 715, 719 et seq. [211 P.2d 905] [brake failure]; *Dennis* v. *Gonzales*, 91 Cal.App.2d 203, 206, 209-210 [205 P.2d 55]; *Matsumoto* v. *Renner*, 90 Cal.App.2d 406, 411 [202 P.2d 1051] [unlighted tail light]; *Takahashi* v. *White Truck etc. Co.*, 15 Cal.App.2d 107, 110 [59 P.2d 161] [unlighted tail light]; *Nelson* v. *Signal Oil & Gas Co.*, 10 Cal.App.2d 448, 449-450 [51 P.2d 885] [unlighted tail light]; *Hardin* v. *Sutherland*, 106 Cal.App. 473, 479-480 [289 P. 900]; *Rath* v. *Bankston*, 101 Cal.App. 274, 279-284 [281 P. 1081] [dictum *re* brake failure]; *Phillips* v. *Pickwick Stages*, 85 Cal.App. 571, 573-574 [259 P. 968] [dictum *re* brake failure]; *Giorgetti* v. *Wollaston*, 83 Cal.App. 358, 363 [257 P. 109] [unlighted tail light]; cf. *M & M etc. Transport Co.* v. *California Auto Transport Co.*, 43 Cal.2d 847 [279 P.2d 13].)

In a second group of cases it is stated or indicated that justification or excuse for violation of a statute can be found only in causes or things "beyond the control of the person charged with the violation." (See *Ornales* v. *Wigger*, 35 Cal. 2d 474, 479 [218 P.2d 531]; *Satterlee* v. *Orange Glenn School*

*Dist.*, 29 Cal.2d 581, 589 [177 P.2d 279]; *Gruss* v. *Coast Transport, Inc.*, 154 Cal.App.2d 85, 87-90 [315 P.2d 339]; *Miller* v. *Jensen*, 137 Cal.App.2d 251, 256-257 [290 P.2d 52]; *Garcia* v. *Webb*, 131 Cal.App.2d 448, 450-451 [280 P.2d 829]; *Jensen* v. *Southern Pacific Co.*, 129 Cal.App.2d 67, 77-79 [276 P.2d 703]; *Kuehn* v. *Lowthian*, 124 Cal.App.2d 867, 871-872 [269 P.2d 666]; *Graf* v. *Garcia*, 117 Cal.App.2d 792, 797-798 [256 P.2d 995]; *Carlson* v. *Shewalter*, 110 Cal.App.2d 655, 658 [243 P.2d 549]; *Parmalee* v. *Bartolomei*, 106 Cal.App.2d 68, 70-72 [234 P.2d 1019]; *Wilkerson* v. *Brown*, 84 Cal.App.2d 401, 406-407 [190 P.2d 958]; *Mecchi* v. *Lyon Van & Storage Co.*, 38 Cal.App.2d 674, 682-683 [102 P.2d 422]; *Gallichotte* v. *California Mut. etc. Assn.*, 4 Cal.App.2d 503, 506 [41 P.2d 349]; *Morris* v. *Purity Sausage Co.*, 2 Cal.App.2d 536, 539-540 [38 P.2d 193].) Instructions to this effect are contained in California Jury Instructions, Civil, No. 149 and No. 149.1, but the authors state that these were included in deference to a dictum in *Ornales* v. *Wigger*, 35 Cal.2d 474, 479 [218 P.2d 531], and that such an instruction sets up a confusing and impossible standard. (See 1 Cal. Jury Instns., Civ. (4th rev. ed., 1956), pp. 392-393.) Many of the cases in this group have not applied the "beyond the control" test strictly but, rather, have used it in the sense that the factors or causes involved would not have been anticipated and guarded against by a person of ordinary prudence who wished to obey the statute.

A third method of expressing what would serve as a justification or excuse is found in an instruction, approved by some cases, which declares that the jury may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes, not of his own intended making, induce him, without moral fault, to do otherwise. (*Combs* v. *Los Angeles Ry. Corp.*, 29 Cal.2d 606, 609-611 [177 P.2d 293]; see *McEachen* v. *Richmond*, 150 Cal.App.2d 546, 551 [310 P.2d 122]; see also Cal. Jury Instns., Civ. (4th rev. ed., 1956), pp. 392-393.) However, it has been held not error to refuse to give this instruction because it contains vague and shadowy concepts which lack the precision of good legal definition. (*Cucuk* v. *Payne*, 140 Cal.App.2d 881, 887 [296 P.2d 7].) The criticism seems to be valid, since it would be difficult, if not impossible, for jurors to understand from this language what they were expected to look for in passing upon the conduct of the person who is charged with having violated the statute.

■ In our opinion the correct test is whether the person who has violated a statute has sustained the burden of showing that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law. The language contained in the second and third groups of cases referred to above is disapproved insofar as it is inconsistent with the rule just stated.

■ The jury in the present case was instructed that, in order to overcome the presumption of negligence, the evidence must show that the statutory violation resulted from causes or things beyond the control of the person charged with the violation. Plaintiff, however, is not in a position to complain of this instruction since he requested it and it was more favorable to him than a statement of the proper rule.

■ When the correct test is applied to the facts of the present case, it appears that the evidence is sufficient to go to a jury on the question whether defendant acted as an ordinary prudent man who wished to comply with the statutory requirements as to brakes. Defendant's automobile was a 1949 model which he had purchased in January 1955, and it was equipped with hydraulic foot brakes and a mechanical hand brake which worked independently. There is evidence that he drove the car to test the brakes when he purchased it and that they were in good condition. During the five months which elapsed prior to the accident, there was nothing wrong with the brakes and they were "working in perfect condition." Defendant had the car lubricated at a service station in April 1955 and was given a service "receipt and guarantee" which indicated that the wheel brake cables and master cylinder had been inspected and lubricated and that no service or replacements were recommended. A few weeks before the accident a garage did some work on the clutch, and at that time no suggestion was made to defendant that there was anything wrong with the brakes. On the day of the accident defendant drove 10 miles to his place of employment, stopping at numerous intersections, and the brakes worked perfectly. The car was parked at 7:45 in the morning and was not driven until defendant's quitting time at 4:30 p.m. After he left his parking place, it was not necessary for him to apply the brakes until he reached the scene of the accident, about two and a half blocks away, and he had no warning of any kind that there was anything wrong with the brakes.

The evidence thus presents a question for the jury as to whether defendant took sufficient steps to meet his obligation

to maintain his brakes in good condition, and plaintiff's motion for a directed verdict was properly denied.

█ Plaintiff is correct in his contention that errors were committed in giving instructions requested by defendant. The court gave the unavoidable accident instruction condemned in *Butigan* v. *Yellow Cab. Co.*, 49 Cal.2d 652 [320 P.2d 500]. The jury was also instructed: "The mere fact that an accident happened, considered alone, does not support an inference that some party, or any party, to this action was negligent." We have held that, where, as here, the uncontradicted evidence warrants the application of the doctrine of res ipsa loquitur, it is error to give the quoted instruction. (*Jensen* v. *Minard*, 44 Cal.2d 325, 329 [282 P.2d 7] ; see *Shaw* v. *Pacific Greyhound Lines, ante*, pp. 153, 156-158 [323 P.2d 391] ; *Phillips* v. *Noble, ante*, pp. 163, 166-167 [323 P.2d 385] ; *Barrera* v. *De La Torre*, 48 Cal.2d 166, 170 et seq. [308 P.2d 724] ; *cf. Brown* v. *George Pepperdine Foundation*, 23 Cal.2d 256, 261-262 [143 P.2d 929] ; *England* v. *Hospital of Good Samaritan*, 22 Cal.App.2d 226, 230 [70 P.2d 692] ; *Ellis* v. *Jewett*, 18 Cal.App.2d 629, 634 [64 P.2d 432].) █ For the reasons set forth in the cited cases holding it is error to give the mere happening of the accident instruction where an inference of negligence arises as a matter of law, it is likewise error to give that instruction where a presumption of negligence arises as a result of defendant's disobedience of a statute. The question is whether these errors require a reversal of the judgment. (Const., art. VI, § 4½.)

█ No precise formula can be drawn for deciding whether there has been a miscarriage of justice. In each instance the determination whether the probable effect of an instruction has been to mislead the jury and whether the error has been prejudicial so as to require a reversal depends upon all the circumstances, including the evidence and the other instructions given. Here there were instructions that made it clear that under the admitted facts a prima facie case has been proved against defendant and that, in order to escape liability, he must exculpate himself by showing justification or excuse. As we have seen, the evidence on this issue was uncontradicted and amply sufficient to show that prior to the accident defendant took reasonable precautions to see that his brakes were in good working condition. Under the circumstances it does not appear that there has been a miscarriage of justice.

■ The appeal from the "verdict" is dismissed since no appeal lies therefrom. The judgment is affirmed.

Traynor, J., Schauer, J., and Spence, J., concurred.

McComb, J., concurred in the judgment.

CARTER, J.—I dissent.

It is my considered opinion that the giving of the two improper instructions caused a miscarriage of justice and that the judgment should be reversed.

The ephemeral constitutional standard for identifying reversible error has not been rendered concrete by judicial effort. Certainly the people of California did not intend to nullify the right to a jury trial guaranteed by article I, section 7, of the California Constitution by adding article VI, section 4½, which requires a miscarriage of justice to justify a reversal.* A proper construction would be consonant with the purpose of the amendment which is to relieve the judiciary of the burden of retrying cases merely because of technical errors. It does not license appellate courts to weigh evidence except where it is so massive on one side as to remove the issue from any doubt. The statement of this court in *Herbert* v. *Lankershim*, 9 Cal.2d 409 at 476 [71 P.2d 220], is pertinent: That article VI, section 4½ may dispel error only if the justice of the case preponderates so obviously that none of the errors could have contributed to the findings below.

To affirm this case because the errors committed were non-prejudicial, this court has been forced to make factual determinations from the record and effectively deprive appellant of his right to a jury trial. The majority has determined that the inference of negligence raised by the doctrine of res ipsa loquitur and by statutory violation is rebutted by *defendant's own* testimony.

In *Phillips* v. *Noble, ante,* p. 163 [323 P.2d 385], the court instructed the jury that the happening of an accident does not necessarily mean there was negligence. In dissenting (p. 92) I suggested the following tests for determining prejudicial error:

(1) If there is a conflict in the evidence concerning defendant's negligence and weak or nonexistent evidence of plain-

---

*I have discussed this at length in two dissents: *Buckley* v. *Chadwick*, 45 Cal.2d 183 at 208 [288 P.2d 12, 289 P.2d 242], and *People* v. *Tarantino,* 45 Cal.2d 590 at 604 [290 P.2d 505].

tiff's contributory negligence, the giving of this instruction is prejudicial.

(2) If the evidence of defendant's negligence is weak and there is substantial evidence of contributory negligence, the error is probably nonprejudicial.

(3) If plaintiff makes out a prima facie case based on res ipsa loquitur applied as a matter of law, it is always prejudicial error to give the questioned instruction.

This case clearly falls within tests (1) and (3) above stated.

### THE EFFECT OF THE INSTRUCTIONS UPON THE JURY

The trial court instructed the jury that if defendant violated the statutory duty to have proper brakes, then he was presumed negligent. The court previously gave the instruction that the occurrence of an accident does not necessarily imply negligence and the unavoidable accident instruction. Although res ipsa loquitur applies to this case as a matter of law, no instruction on this doctrine was requested.

The inference arising from defendant's conduct forced him to produce evidence powerful enough to convince the jury that it was not probable that he was negligent. The effect of the instructions was to confuse or erase this impression in the jurors' minds. (*Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652 [320 P.2d 500]; *Jensen* v. *Minard*, 44 Cal.2d 325 [282 P.2d 7].) This alone has been designated prejudicial error. (*Davenport* v. *Stratton*, 24 Cal.2d 232 [149 P.2d 4]; *Hyman* v. *Market Street Ry. Co.*, 41 Cal.App.2d 647 [107 P.2d 485]; *Scandalis* v. *Jenny*, 132 Cal.App. 307 [22 P.2d 545].) The instruction in the instant case is stronger than in Butigan because it omitted the cautionary statement that the defense of unavoidable accident may not be used by a defendant who did not use ordinary care. The addition of the instruction that a collision between two automobiles does not necessarily imply negligence made the error more damaging than was the case in Butigan.

These instructions probably confused the jury because:

(1) There could be no evidence of unavoidable accident in this case under the Butigan rule. A conscientious juror, reasonably expecting only pertinent instructions, would naturally search his memory for facts which might fit this pattern. The phrase ''unavoidable accident'' strongly suggests an undefinable area of activity between defendant's nonnegligence and his slight negligence. In the instant case the evidence suggests defendant was not grossly negligent. Such negligence

as the jury might have found could easily be swept under the carpet of unavoidable accident. Where the issue of negligence is a close one, such an alternative is tempting. The confusion caused by the unavoidability instructions was magnified here by the instruction that an accident of this character does not necessarily imply negligence.

(2) The inferences arising out of facts relating to *this* collision establish negligence on the part of defendant unless he proves otherwise. The jury must begin its reasoning from the side of plaintiff, not from a neutral position. These instructions tell the jury a contrary story and may effectively have eliminated the inferences from the minds of the jurors. To say they did not is to make a finding of fact by judicial prescience. To say it is not clear they did is to place on appellant the burden of showing they did. Just how any appellant is to prove the effect of these instructions upon each juror's trend of thought is a mystery. But by deciding arbitrarily that an appellant must do so the court is taking away the right to trial by jury from appellants with justifiable complaint. This has been held prejudicial. (*Russell* v. *Andersen,* 101 Cal.App.2d 684, see 697 [226 P.2d 350] ; *Bieser* v. *Davies,* 119 Cal.App. 659, see 664 [7 P.2d 388].)

Because the inferences were obliterated by the instructions the jury did not have to examine defendant's evidence. If the jury did not think the mere malfunctioning of brakes or defendant's sole control of the vehicle was sufficient evidence of his negligence, defendant needed no justification in their eyes. This court, however, has determined for them that defendant's testimony was true and his actions reasonable even though the Constitution says the plaintiff may have this determined by a jury of his peers. The majority decision here is an excellent example of the mischief perpetrated by this court by taking upon itself the job of fact finding.

### Defendant's Testimony Does Not Explain the Failure of His Brakes

According to defendant's own testimony :

(1) During the five months he owned the car its brakes always worked ;

(2) He had his clutch repaired at Newton's Garage two to four weeks before the collision. Defendant testified that the employees of the garage did not then recommend any repair of the brakes. There was no testimony that the brakes were even tested at that time !

(3) About two months before the collision defendant had his car lubricated. The service station gave defendant a service receipt and guarantee which indicated by check marks that the wheel brake cables and master cylinder had been inspected and lubricated in accordance with the company's lubrication guide. No service or replacement were recommended at that time.

All of this was self-interested testimony of defendant and it is open to suspicion for that reason. No inference can be drawn from number (2) as to the condition of the brakes at that time. The value of testimony under (3) is open to these questions:

(a) How thorough was the station's inspection?

(b) How qualified were the personnel to judge the condition of the *whole* brake system?

(c) Did defendant inspect the brakes when he bought the used car? Were his later inspections frequent and thorough enough?

(d) Assuming the master cylinder and cables were in good condition, was the whole system tested? What part of it failed and caused the collision?

The latter is a vital point. The theory of res ipsa loquitur is that the defendant must show what caused the injury because only he knows. In this case defendant did not present this evidence. It was incumbent upon him to show his lack of negligence in respect to the *very cause* of the accident if he was able to do so. (*Dierman* v. *Providence Hospital*, 31 Cal.2d 290 [188 P.2d 12].) He made no effort to do so nor to explain why he didn't. His evidence is to be viewed with distrust (Code Civ. Proc., § 2061, subd. 7).

It is the jury's function to determine the truthfulness of testimony and it may reject evidence it disbelieves. Therefore the fact that it was uncontradicted does not mean it would have to be believed. It is also a jury function to determine whether particular acts constitute negligence by applying the reasonable man test. The processes of a court are legal, not mechanical. In this case the majority has usurped all of those functions and determined facts from the record. Article VI, section 4½, and article I, section 7, do not permit us this privilege.

I would therefore reverse the judgment.

SHENK, J.—I dissent.

The evidence shows conclusively that the plaintiff was en-

tirely faultless in what occurred, causing his personal injuries and damage to his property. The defendant ran into his automobile from the rear and there is not the slightest suggestion of negligence on the part of the plaintiff. The defendant was operating his car with defective brakes in violation of the law. He was thereby presumptively negligent.

The true test of his culpability is not whether he did all that a reasonable man should to have his mechanical brakes kept in good condition, but what he did immediately prior to the accident. By his own admission he neglected to use his hand brakes. His statement that he was too excited to use them did not absolve him from negligence. One of the tragedies of the law is that an innocent victim, one entirely without fault, is subjected to personal injury, and is without redress, as against the operator of an instrumentality put upon the highway which may because of its defective condition in the hands of the operator, cause harm to another who is entirely without fault. The instructions were admittedly erroneous, and under the circumstances of this case were prejudicial.

There is authority in the second group of cases cited in the majority opinion to support a conclusion of liability in this case as a matter of law. In addition, the judgment could be reversed on the theory of *Green* v. *General Petroleum Corp.*, 205 Cal. 328 [270 P. 952, 60 A.L.R. 475]. In my opinion there has been a miscarriage of justice in this case. The judgment should be reversed.